# EXHIBIT N

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHANNON BRITTON, et al,

Plaintiff,

-vs- Case No. 21-CV-1354

UNION PACIFIC RAILROAD COMPANY,

Defendant.

---

REMOTE DEPOSITION OF CONOR KORTENDICK

May 4, 2022

9:30 a.m.- 12:35 p.m.

REPORTED BY: KRYSTIN ZIMBA, appearing remotely in Fitchburg, Wiscosnin



MAGNA LEGAL SERVICES

A P P E A R A N C E S

JUDGE LANG & KATERS, LLC
8112 W. Bluemound Rorad, Suite 101
Wauwatosa, WI 53213
dlang@jlk-law.com/414-777-0778
MR. DAVID LANG, Attorney At Law
appeared remotely on behalf of Plaintiffs, Shannon Britton et al

CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
300 S. Wacker Drive Ste. 1050
Chicago, IL 60606
eanalo@constangy.com./773-661-4710
M. ELYSIA BAKER ANALO, Attorney At Law
appeared remotely on behalf of Defendant, Union Pacific Railroad Company



MAGNA Legal Services

A Well, they didn't provide the proper amount of time, 60 days notice, to close the facility in Milwaukee, Butler, and they're not disclosing all the employees that were forced to retire or transfer forcibly out of state.

Q So I want to make sure I am understanding you. Are you saying -- you know, I will scroll to paragraph 41 here.

A Okay.

Q Here in this second sentence, it says that Union Pacific provided fraudulent information to the State of the number of employees working in the state of Wisconsin and laid off at Butler Yard and throughout the state. So I want to make sure I understand. Are you claiming that Union Pacific misrepresented the number of employees working in Wisconsin?

A I don't know about working -- I'm sorry, where does it say that the amount of people working in Wisconsin?

Q Here in the second sentence, "provided fraudulent information to the State on the number of employees working in the state of Wisconsin and laid off at Butler Yard." So it appears that the plaintiffs are alleging two things, that Union Pacific provided incorrect information about the number of employees


MAGNA LEGAL SERVICES

working in the state of Wisconsin and also provided incorrect information about the number of employees laid off at the Butler Yard.

So I want to just get some clarity and understand what the claim is. So I'm asking you, are you claiming that Union Pacific provided incorrect information on the number of employees working in the state of Wisconsin?

A No. I don't think they -- they provided -- I mean, I don't know for sure the amount of employees working in Wisconsin. So I don't think they provided incorrect information on that part, just that they're claiming that they -- the affected employees didn't meet the minimum of 25 people.

Q Okay.

A Does that make sense?

Q I think so. So are you claiming that Union Pacific provided incorrect information about the number of employees total laid off at Butler Yard?

A Correct. Yes.

(Whereupon, the Zoom connection failed.)

BY MS. ANALO:

Q I don't know if I asked another question after that, but just so the record's clear, I'm asking if -- if you believe that Union Pacific provided incorrect


MAGNA LEGAL SERVICES

information about the number of total employees laid off at the Butler Yard?

A Yes, I believe so. From the roster that I think State of Wisconsin put together about the 70 people, they only included that 21 were affected employees where they left the car department, the Yardmasters and the two that are forced to retire. So that would bring our number to at least 35, two of them forced to retire, seven from the car department and five Yardmasters that were forcibly transferred out of state.

Q Okay. So is your argument that Union Pacific misrepresented the number of employees -- I'm sorry. Let me rephrase that. Is it your argument that Union Pacific misrepresented the number of affected employees at Butler Yard?

A Yep. And that they didn't give 60 days of notice that they're losing their job or being transferred out of state.

Q So you're not claiming that Union Pacific misrepresented the number of employees laid off throughout the state, it's just the number of affected employees at the Butler Yard after the February 2019 reduction in force?

A Yeah. That's correct. I'm not familiar with the


MAGNA LEGAL SERVICES

amount of employees laid off throughout the state. I'm focusing on the Butler Yard myself.

Q Thank you. I just wanted to clarify that. And when you say that Union Pacific made these misrepresentations, who did they make these misrepresentations to?

A From my understanding, they didn't provide the right information to the State of Wisconsin; that they only told them that only 21 were affected instead of at least 35 that I believe that are affected.

Q And why do you believe that Union Pacific made these misrepresentations to the State of Wisconsin?

MR. LANG: I'm going to object, form and foundation, calls for speculation on his part.

BY MS. ANALO:

Q You can answer.

A Do you want me to answer that?

Q You can answer. Yes.

A That they thought that they were still in the company for the people that transferred and that these two gentlemen decided to retire out of their own free will, but that wasn't the case. If you look at the dates, they were retired in February around the time that everyone was furloughed. So, I mean, it's kind of clear that they were forced to retire the same



MAGNA LEGAL SERVICES

A Correct.
Q And for Mr. Beson, Ms. Mapp and Mr. Anderson, Mr. Garland states that all three were furloughed in October of 2019. Did I summarize that correctly?
A Yep.
Q Do you have any reason to believe that those statements about Mr. Beson, Ms. Mapp and Mr. Anderson are untrue?
A I do not but I do not know them personally to know if that's true or not.
Q And then turn to the next section, "Voluntarily Retired," which goes onto the fourth page of the document. So it spans from PL.Britton 000033 to 34. Mr. Garland, writing on behalf of Union Pacific, states, "The Department of Workforce Development regulations are clear, quote, an affected employee does not include an employee discharged for cause or employees who terminate their employment as a result of retirement or voluntary departure," and then it cites a regulation DWD279.01. Did I summarize that correctly?
A Yes. That's what it states.
Q And then Mr. Garland identifies Larry Ebert and Dennis Grimm, correct?
A Correct.


MAGNA LEGAL SERVICES

Q And he states Larry Ebert -- Mr. Ebert took an age retirement?
A Yep. That's what it states.
Q Do you have any reason to believe that that statement is untrue?
A I don't think they voluntarily took the retirement. I think they were forced into retiring because they weren't offered the opportunity to transfer to another shop to continue their railroad.
Q And when you say "forced into retiring," what do you mean?
A I mean that they wouldn't have a place to work since Butler shut down.
Q So is it incorrect that Mr. Ebert did take an age retirement, to your knowledge?
A I mean, I'm saying he was left with no other option but to retire. So that's why I say forced.
Q I see. So if I'm understanding you correctly, you agree that Mr. Ebert did retire, but you believe that he was forced to retire?
A That's correct. Yes.
Q And when you say that he was forced to retire, am I understanding you correctly that you believe the circumstance were such that he felt forced to retire?
A Yeah. That they left him no other option but to


MAGNA LEGAL SERVICES

retire. He would have kept working till he -- I'm not sure when he was planning on retiring, but he would have kept working if it wasn't for them closing the Butler Yard.
Q But Mr. Ebert, to your knowledge, made the decision to retire in February of 2019?
MR. LANG: Object, form and foundation. Go ahead.
THE WITNESS: Yes.
BY MS. ANALO:
Q I believe you said yes; is that correct?
A Well -- I mean, yeah. I mean, he had to make the decision. Other -- I, mean he didn't have any other decision.
Q And did you speak to Mr. Ebert directly about this?
A During when all this was happening back in February, yes. I haven't had any contact with him since then.
Q And have you spoken with Mr. Grimm about his retirement?
A Same with Larry Ebert, since February but no contact with him since then.
Q Okay. So for Mr. Grimms you don't --
A The same story.
Q Sorry. I didn't mean to interrupt you.
A Sorry. I interrupted you.


MAGNA LEGAL SERVICES